**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**DONNA M. BODISON,**

      **Plaintiff,**

**vs.**                                                **CASE NO. 1:07CV107-MP/AK**

**MICHAEL J. ASTRUE,
Commissioner of Social Security**

      **Defendant.**

                                         /


**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.**      **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on December 21, 2004, alleging a disability onset date of November 26, 2004, because of back pain, knee pain, ulcer disease, gastritis, and borderline intellectual functioning.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on August 31, 2006, and

entered an unfavorable decision on December 6, 2006.  The Appeals Council denied

Plaintiff's request for review, thus making the decision of the ALJ the final decision of

the Commissioner.  This action followed.

## B.    <u>FINDINGS OF THE ALJ</u>

The ALJ found that Plaintiff had severe impairments; a back disorder with chronic

neck and back pain, a soft tissue disorder, right knee pain, borderline intellectual

functioning and a history of peptic ulcer disease and chronic gastritis.  (R. 17).

However, none of these impairments, either singly or in combination, meet the listings of

impairments.  (R. 20).  The ALJ found Plaintiff capable of light work, limited to

occasional climbing, balancing, stooping, crouching, kneeling and crawling, and from

hazards.  (R. 21). Plaintiff is also limited to low stress, simple, unskilled work with one,

two, or three step instructions, and restricted in her ability to concentrate upon complex

or detailed task, but capable of understanding, remembering and carrying out simple job

instructions.  (R. 21).  The ALJ found no support in the medical record for her

allegations of pain and limitation from her back or other physical conditions, and giving

Drs. Jones and DePaz great weight as her treating physicians, he found that she retains

the residual functional capacity for light work.  The ALJ gave little weight to the opinion

of Dr. Spitznagel, who was paid by Plaintiff's attorney for his opinion rendered in the

context of her disability application and ongoing workers compensation lawsuit.  (R. 22).

The ALJ also properly considered, but gave little weight, to the opinion of the vocational

counselor, who is not a medical source.  (R. 22).  The ALJ, finding that Plaintiff could

perform a light level of work, noted that this finding precludes her past relevant work, but

there are a number of jobs which she could perform and this number of jobs would not

**No. 1:07CV107-MP/AK**

be further limited by her intellectual limitations such as reading and writing on a second grade level, according to a vocational expert.  (R. 23-24).

## C.    ISSUES PRESENTED

Plaintiff argues that the ALJ erred in not finding that she met the requirements of Listing 12.05(c) because the only measure of her IQ in the record shows it is 70 and she has several physical impairments as well.

The government responds that the ALJ noted several pieces of evidence that supported his finding that the IQ scores were not valid.  She had worked for 27 years, she worked crossword puzzles, she had a current driver's license, had a high school diploma in special education, and had raised a family.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

**No. 1:07CV107-MP/AK**

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It

is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the

evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86

F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence

supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624

(11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to

the Commissioner's findings, where there is substantially supportive evidence of the

Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d

227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the

Commissioner's findings of fact, his conclusions of law are not presumed valid.  Martin v.

Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's

failure to apply correct legal standards or to provide the reviewing court with an

adequate basis for it to determine whether proper legal principles have been observed

requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To

qualify as a disability the physical or mental impairment must be so severe that claimant

is not only unable to do his previous work, "but cannot, considering his age, education,

**No. 1:07CV107-MP/AK**

and work experience, engage in any other kind of substantial gainful work which exists

in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in

five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation

unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps

him from performing his past work.  If Plaintiff establishes that his impairment keeps him

from his past work, the burden shifts to the Commissioner at step five to show the

existence of other jobs in the national economy which, given Plaintiff's impairments,

Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986);

MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner

carries this burden, Plaintiff must prove that he cannot perform the work suggested by

the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within

the district court's discretion to affirm, modify, or reverse a Commissioner's final

**No. 1:07CV107-MP/AK**

decision with or without remand. 42 U.S.C. § 405(g); <u>Myers v. Sullivan</u>, 916 F.2d 659, 676 (11th Cir. 1990).

## E.   <u>SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY</u>

Plaintiff worked over 25 years as a kitchen aide and fell at work twice in 1998 and 1999 injuring her back.  She reached maximum medical improvement on November 9, 1999, with a 3% disability rating and was released to work at a light to medium level of activity by Dr. DePaz.  (R. 229, 277, 274, 233, 254).  Dr. DePaz found no functional limitations from her injuries and a MRI showed no significant abnormalities and no explanation could be given for her pain.  (R. 201, 229, 233).  She conceded to Dr. DePaz that she was not interested in returning to work and wanted assistance in obtaining disability benefits.  (R. 277).  She was told to be as active as possible.  (R. 275).  She complained about working in the dish room which required lifting, bending and twisting, and Dr. DePaz wrote her a note to avoid this work.  (R.257).  Ultimately, she was dismissed on January 24, 2005, because she was no longer able to perform her job duties without assistance from other employees.  (R. 126-127).  She sued for workers compensation benefits and a vocational report was obtained in conjunction with this lawsuit that opined she was unable to perform any work because of her physical limitations and lower cognitive functioning, which testing showed to be an IQ of 70.  (R. 128-133, 177-180).  Vocational Rehabilitation referred her for social security benefits. (R. 124-125).

**No. 1:07CV107-MP/AK**

She was treated for several abdominal complaints, but no permanent or disabling limitations from these conditions were noted by her treating source, Dr. Jones.  (R. 182-219).

## F.      SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff appeared at the hearing with her guardian and attorney.  (R. 27-28).  The attorney argued that she met Listing 12.05(c) because of her impaired intellectual functioning, which existed prior to age 22 as supported by the fact that she was in special education classes all through her school years, that she tested at second grade levels in math and English, and she had worked as a kitchen aide for over 20 years with accommodations.  (R. 29-31).  At the time of her hearing, she was 47 years old, married, with two children. (R. 32-33).  Until she was dismissed, Plaintiff worked as a kitchen helper for 27 years, fixing salads, helping cook, serving, and cleaning the kitchen area.  (R. 34).  She was dismissed because she was unable to do the job after she slipped and fell at work twice.  (R. 35).  She sees Dr. DePaz every month for her lower back pain, but has not had surgery and has been told to take her medication and walk regularly.  (R. 36).  She describes pain from her head down into her right leg.  (R. 38).  She can read and write "very little," and could not write herself a short note.  (R. 39).  Her son accompanies her everywhere she goes and does most of the driving.  (R. 40).  She does not read the mail or do any housework.  (R. 40).

A vocational expert testified that her only relevant past work was performed at a medium level.  (R. 45).  The ALJ posed a hypothetical which included work at a low

**No. 1:07CV107-MP/AK**

stress, simple unskilled level, one, two or three step instructions, able to lift/carry 10

pounds frequently, 20 pounds occasionally stand/sit six hours, pushing and pulling with

upper extremities, but not pushing or pulling with lower extremities, avoiding hazards,

heights, ramps, ladders, scaffolds, with only occasional climbing, balancing, stooping,

crouching, kneeling or crawling.  (R. 46).  The expert testified that she could not perform

her past relevant work, but could perform other jobs such as an inspector, assembler,

and packer.  (R. 47).  If the ALJ added a second grade level of math and reading, it

would not change the jobs which she could perform.  (R. 48).  The addition of

depression as a limitation would also not change his opinion.  (R. 49).

Witness Margaret Tate, Plaintiff's guardian, testified that she raised Plaintiff from

the time she was in the sixth grade and found her developmentally behind other

children, but she and her four daughters worked with the Plaintiff to teach her things like

putting her shoes on the right feet.  (R. 51).  Plaintiff was in special placement classes

throughout her education and was promoted for attendance, not performance.  (R. 52).

Vocational rehabilitation suggested to Ms. Tate that Plaintiff was not able to attend

college, but they could place her in a job, which they did, as a kitchen aide at the

treatment facility where she stayed until she was dismissed.  (R. 53).

## G.      DISCUSSION

Listing 12.05(C) requires a "valid verbal, performance, or full scale IQ of 60

through 70 and a physical or other mental impairment imposing and additional and

significant work-related limitation of function."


**No. 1:07CV107-MP/AK**

The ALJ found that the evidence did not establish that she was disabled prior to age 22 or that the test results of her IQ were valid.

Plaintiff argues that the presumption is that IQ remains fairly constant throughout life and evidence even after age 22 is presumptive of IQ prior to age 22.  Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001).  Further the evidence of record was replete with proof that she suffered from sub-average intelligence in her early years, including testimony from her guardian that Plaintiff was significantly delayed as a child and could not read or write beyond the second grad level.

Plaintiff argues that the ALJ's explanations for rejecting this evidence or for his finding that the test results of her IQ were not valid are unsupported by the record.  His reference to evidence supporting his finding is that she could do crossword puzzles, but the record is that she reported trying to do word puzzles and there is no mention of the level of difficulty of these puzzles.  Dr. Spitznagel, who mentioned the puzzles, stated in his report that he found the vocational evaluation (and presumably the IQ test) to be valid.  The ALJ also found that the IQ test taken in 2005 was suspect because it was after she sought disability benefits and thus at a time when she was unmotivated to perform well on the test.  The test evaluator did not find her to be manipulating the test results nor is it likely that she could do such.

The government responds that an IQ score is not conclusive evidence of mental retardation if it is inconsistent with other evidence of record.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Popp v. Heckler, 779 F.2d 1497 (11th Cir. 1986).

**No. 1:07CV107-MP/AK**

Whether or not the IQ test was valid seems to the undersigned to miss the point. In order to meet the requirements of 12.05(c), Plaintiff must show that she has another impairment (mental or physical) that imposes an additional and significant work limitation.  There is no evidence of record to support that her back, neck or knee pain causes any disabling functional limitation.  The MRI does not confirm any condition and Dr. DePaz found no functional limitation resulting from her fall.  She is precluded from work requiring exertion beyond a light exertional level, as supported by the record (state agency functional assessments and Dr. DePaz' opinion) and as found by the vocational expert, but there were numerous jobs within this range that were not beyond her limited cognitive abilities.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this 6th day of May, 2008.


_s/ A Kornblum_____
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:07CV107-MP/AK**

**No. 1:07CV107-MP/AK**